PETER J. MULLHOLLAND & others *vs.* STATE RACING
COMMISSION & others.

HARRY L. MASTERS & others *vs.* SAME.

Suffolk.    November 12, 1935. — September 9, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Racing. Supreme Judicial Court,* Moot question. *Zoning. Equity Juris-
diction,* To enforce zoning law, To enjoin action under unconstitutional
statute. *Nuisance.*

In a suit against the State racing commission for the revocation of a license
issued by it, expiration of the license before the hearing of the suit in
this court rendered moot the question of its validity and therefore
that question was not decided.

A private citizen or landowner cannot maintain a suit in equity to enjoin
another from violation of zoning laws.

A suit in equity for the abatement of a nuisance, alleged to consist of rac-
ing stables to be constructed in the future four thousand feet distant
from property of the plaintiff, could not be maintained where it was
not shown that, when built, they would be a nuisance to the plaintiff.

The questions, whether St. 1934, c. 474, is constitutional, and whether
any license, issued under it, to hold a horse racing meeting was valid,
could not be raised by a suit in equity brought by private persons
whose personal or property rights were not shown to have been directly
affected by the acts of the defendant.

TWO BILLS IN EQUITY, filed in the Superior Court on April
25, 1935.

The suits were submitted on a "case stated" to *Sisk*, J.,
who reported them to this court for determination.

*E. M. Dangel, (L. E. Sherry & S. Andelman* with him,) for
the plaintiffs.

*R. Clapp,* Assistant Attorney General, for the defendant
State Racing Commission.

*C. H. Innes,* for the defendants Eastern Racing Associa-
tion, Inc., and others.

RUGG, C.J.    These suits in equity by agreement were
submitted to a judge of the Superior Court on a case stated,
as it is termed in the record, signed by attorneys represent-

ing all parties, wherein is a recital that the material ultimate facts on which the rights of the parties are to be determined are there set forth. The parties presented no evidence. Without decision, the trial judge made a single report covering both cases for determination by this court. G. L. (Ter. Ed.) c. 231, § 111. *Atlantic Maritime Co.* v. *Gloucester,* 228 Mass. 519, 522–523. *Boucher* v. *Hamilton Manuf. Co.* 259 Mass. 259, 266–267. *Merrimac Chemical Co.* v. *Moore,* 279 Mass. 147, 152.

The plaintiffs are citizens, property owners and taxpayers in Boston and Revere, the cities in which they live, the nearest to the race track hereafter described being located about two thousand feet away in a direct line and four thousand feet from the projected stables. The defendants are (1) the members of the State racing commission (hereafter called the commission), established by St. 1934, c. 374, § 2, whereby a new § 48 was inserted in G. L. (Ter. Ed.) c. 6, (2) Eastern Racing Association, Inc. (hereafter called the corporation), a corporation organized under the laws of this Commonwealth for the purpose of promoting and engaging in the business of racing, and (3) three individuals who are officers and the sole directors of the corporation. The object of the suits is to prevent the corporation from conducting horse racing meetings at a location in Boston and Revere known as Suffolk Downs. The essential facts are these: On April 9, 1935, the commission, acting under St. 1934, c. 374, § 3 (G. L. [Ter. Ed.] c. 128A, § 3), issued to the corporation a license to conduct a running horse racing meeting between June 29 and August 10, 1935, at a track called Suffolk Downs located in Boston and Revere. A general description of the location was in the license. By its terms the license was to expire on the last day of the meeting. At the time of the filing of the application for a license and at the time of the issuance of the license, (1) there were no actual racing track or grounds and no physical structures at the location therein described, although tentative plans had been prepared showing a clubhouse, grandstand, track and other buildings where a racing meeting could be held; (2) no authority had been granted by the city of Boston or the city of Revere under

G. L. (Ter. Ed.) c. 271, §§ 33, 34, consenting to the use of the land as a race track; (3) the location described in the application and license was within fifty miles of a race track in the State of New Hampshire and of another in the State of Rhode Island, each of one mile or more in circumference, and a third at Readville in this Commonwealth of like circumference, which has not been used for horse racing for many years and has not been licensed by the commission; (4) the location known as Suffolk Downs was within the "industrial districts" under the zoning laws of Boston and within the industrial and general residence districts under the zoning ordinance of Revere. On April 22, 1935, the city councils of Boston and Revere consented to the laying out and use of a race track called Suffolk Downs and on the day following the mayors of said cities respectively approved the actions of the respective city councils. On April 27, 1935, the corporation acquired title to a tract comprising approximately one hundred ninety-five acres of vacant land constituting the location of Suffolk Downs and immediately started construction work on the race track. The plans called for a grandstand seating twelve thousand five hundred people, a clubhouse accommodating four thousand people, four entrances to the park, a paddock and stables for one thousand horses, to be occupied during the racing season, and restaurants and lunch counters. On June 6, 1935, the mayor of Revere approved previous action by the city council whereby the zoning ordinance of Revere was amended by rezoning so that the entire portion of Suffolk Downs within that city came within the "business district" and was no longer in the "general residence district."

The prayers of the bills are (1) that the commission be ordered to revoke the license granted to the corporation, (2) that the corporation be enjoined from laying out, constructing or using the land for a race track, (3) that the individual officers of the corporation be likewise restrained, (4) that the license issued by the commission to the corporation be declared illegal and void, and (5) for further general relief.

The burden of the plaintiffs' complaint against the com-

mission is that the license was improperly and illegally granted to the corporation to conduct a running horse racing meeting between June 29 and August 10, 1935. The merits of these contentions need not be considered. The license stated in terms that it "will expire on the last day of the meeting." It is plain, therefore, that the license became inoperative according to its express words on August 10, 1935. Therefore the alleged wrong by the commission of which the plaintiffs complain has ceased to exist. In these circumstances the court takes cognizance of facts supervening since the institution of the proceedings. When, at the time of the disposition of a cause, the situation is such that the relief sought is no longer available or of any use to the plaintiffs and a decision by the court will not be applicable to existing rights, no decision will be rendered. The questions originally involved have become moot. They are not proper subjects for litigation. *Sullivan* v. *Secretary of the Commonwealth*, 233 Mass. 543, 545–546. *Independent-Progressive Party* v. *Secretary of the Commonwealth*, 266 Mass. 18, 21–22. *Clifford* v. *School Committee of Lynn*, 275 Mass. 258, 260. The present suits were filed on April 25, 1935. The report of the trial judge was made on June 18, 1935. The cases were not reached for argument before this court in ordinary course until November 12, 1935. Through no fault of anybody, the efflux of time renders the form of redress sought by the plaintiffs against the commission of no avail to them. It follows that the plaintiffs show no ground for a decree against the commission.

The relief sought against the corporation and its directors is an injunction against the laying out, the construction, or the use of the premises in question as a race track. The allegations of the plaintiffs' bills and their prayers indicate that their complaint against these defendants is not restricted to the conduct of the single racing meeting authorized by the license. The race track seemingly is still in existence and is physically available for use as may be authorized. Provided the plaintiffs are in a position to demand relief and to prove wrongs by the defendants entitling them to redress, it does not appear that the injunction against these defend-

ants would be of no avail to them or would relate to a matter which has become moot. A decision with respect to such issues would relate to existing facts.

The plaintiffs contend that the statute is unconstitutional, that no license could be lawfully issued pursuant to its terms, that for various reasons the particular license was invalid, that the zoning laws were violated in the construction of the race track, and that the race track and its accompanying structures and uses would result in a public nuisance and a private nuisance to the plaintiffs. Many questions of law have been raised and the arguments in behalf of the plaintiffs have taken a wide range. A few simple propositions of law are sufficient to dispose of the cases. In general individuals have no standing in equity to restrain another from activities on his land which result in violation of zoning regulations. The remedies open to those aggrieved by conduct of that nature are such as may be provided by statute, or, if there is no such provision, by requesting the appropriate public officer to institute proceedings, or, in some instances, by mandamus. No statute confers any right upon the plaintiffs to proceed in equity as to the matters alleged in their bills, in view of the agreed facts. The plaintiffs have no standing to complain of violations by the defendants of zoning regulations. *O'Brien* v. *Turner,* 255 Mass. 84, 85–86. *Siegemund* v. *Building Commissioner of Boston,* 259 Mass. 329, 332, 334–335. *Godfrey* v. *Building Commissioner of Boston,* 263 Mass. 589, 591–593. *Lexington* v. *Bean,* 272 Mass. 547, 554. *Knowlton* v. *Swampscott,* 280 Mass. 69, 71–72. Violation of zoning laws affords to the plaintiffs no ground for a suit in equity. The general principle is that a suit in equity can be maintained only for vindication of rights of property; an individual commonly has no property right to obedience by his neighbors to statutes or ordinances. Rights are not enlarged by reason of the fact that several individuals have joined together as plaintiffs. *Hagerty* v. *McGovern,* 187 Mass. 479. *O'Keefe* v. *Sheehan,* 235 Mass. 390. *Kelley* v. *Peabody Board of Health,* 248 Mass. 165, 169. *O'Brien* v. *Turner,* 255 Mass. 84. *Bancroft* v. *Building*

*Commissioner of Boston,* 257 Mass. 82, 85. *Harper* v. *Board of Appeal of Boston,* 271 Mass. 482, 483.

The plaintiffs contend, also, that the activities to be carried on by the defendants will result in a private nuisance to them. It is argued that the stables which it is proposed by the corporation to erect will constitute such private nuisance. There is no rigid rule to be applied in all cases to determine what constitutes a private nuisance. It depends largely upon the factors in each case. *Stevens* v. *Rockport Granite Co.* 216 Mass. 486, 488–489. *Cumberland Corp.* v. *Metropoulos,* 241 Mass. 491, 501–502. *Shea* v. *National Ice Cream Co. Inc.* 280 Mass. 206, 210. *Kasper* v. *H. P. Hood & Sons, Inc.* 291 Mass. 24, 27. The record presents no agreement that the stables would constitute a nuisance to the plaintiffs. The facts stated do not justify such an inference. The nearest house of any plaintiff is four thousand feet distant from the proposed location of the stables. It cannot rightly be determined on the facts stated that the stables, not built and not described further than already narrated, will create a private nuisance as to the plaintiffs. At the time the case was stated the stables had not been erected and there are no facts indicating the actual effects of the construction and occupation of them. The stables may or may not be a nuisance. *Langmaid* v. *Reed,* 159 Mass. 409, 411. The facts here disclosed do not show the existence of a nuisance. Whether a nuisance may exist or not must be determined after the stables have been built and used. *O'Keefe* v. *Sheehan,* 235 Mass. 390. *Cook* v. *Fall River,* 239 Mass. 90. It cannot be assumed in advance that their construction and use may not be licensed in accordance with law. *Whitcomb* v. *Vigeant,* 240 Mass. 359. *Strachan* v. *Beacon Oil Co.* 251 Mass. 479.

The plaintiffs assail the constitutionality of St. 1934, c. 374, and assert that no license issued under it can validate the race track. The power to grant the license for a horse racing meeting was vested in the commission. It is the general rule that courts of equity will not interfere to decide questions which have been committed by law to the

determination of public officers. Interested parties are left to whatever remedy may be afforded by certiorari or mandamus. *Moneyweight Scale Co.* v. *McBride,* 199 Mass. 503, 505. *Morley* v. *Police Commissioner of Boston,* 261 Mass. 269, 278–279. An exception to this general rule arises where action is about to be taken by the public board under a void or unconstitutional statute, provided the proposed action will be directly injurious to property rights of the complaining party. *Greene* v. *Mayor of Fitchburg,* 219 Mass. 121, 127. No one can question the constitutionality of a statute except one whose rights are thereby impaired. *McGlue* v. *County Commissioners,* 225 Mass. 59. *Horton* v. *Attorney General,* 269 Mass. 503, 514. *Hogarth-Swann* v. *Weed,* 274 Mass. 125, 132. As already pointed out, the facts set forth in the record disclose no private or property rights of the plaintiffs which have been directly affected by acts of the defendants. They show no interest in themselves to justify the maintenance of these suits. The record does not disclose that, at the time the bills were filed, the plaintiffs had personal rights to be vindicated, private wrongs to be redressed, or property interests to be protected. *Warner* v. *Mayor of Taunton,* 253 Mass. 116. *Loring* v. *Bryant,* 281 Mass. 372. It is not necessary to discuss or consider the merits of the several contentions put forward in behalf of the plaintiffs, or the infractions of law alleged to have been committed by the defendants. Under well settled principles the suits cannot be maintained by these plaintiffs on the facts here presented.

*Decrees to be entered dismissing bills.*